IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 09-cv-02892-LTB

MARCY GREENBERG,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

ORDER
_____

Plaintiff Marcy Greenberg appeals Defendant's (the "Commissioner") final administrative decision denying her claim for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision in part; reverse it in part; and remand the case for further proceedings consistent with this Order.

**I. Statement of the Case**

Plaintiff applied for benefits under the Act in December of 2004. Following the initial denial of benefits, a hearing was held before an administrative law judge (the "ALJ"). On November 14, 2007, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's November 14, 2007 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II. Statement of Facts

### A. Background

Plaintiff was born in 1956 and was 51 years old at the time of the Commissioner's decision. Administrative Record ("AR") 25 & 135. Plaintiff completed 6 years of college and worked as a water treatment plant operator for over 20 years. AR 40 & 67. Plaintiff alleges that she became disabled on November 15, 1999 as a result of depression, anxiety, Grave's disease, and rheumatism in her left shoulder. AR 269-70. After November of 1999, Plaintiff attempted to work as a maintenance worker and an automobile parts driver but was terminated from these jobs after only a short time. AR 37-8.

In July of 1999, Plaintiff was seen by Michele Velkoff, M.D., a general practitioner. AR 343-44. Dr. Velkoff noted that Plaintiff had Graves' disease that was asymptomatic; depression; and an abscess behind her right ear. *Id.* In July of 1999, Plaintiff was also seen by Nigel Pashley, M.D., for treatment of the abscess/cysts behind her ears. AR 333-37. Dr. Pashley noted Plaintiff might be "hormonally challenged" based on her "masculinizing features" and that Plaintiff was on "major antidepressant medication which does not appear to be particularly effective in her case ...." AR 333 & 337.

In June of 2000, Dr. Velkoff noted that Plaintiff had extreme vegetative symptoms; was "profoundly depressed;" and indicated that "she feels she is a man in a woman's body." AR 339-40. In June and July of 2001, Dr. Velkoff noted that Plaintiff had chronic depression and that she "desperately needs to see a psychiatrist." AR 422-23.

Dr. Velkoff completed a Med-9 Form for Plaintiff in February of 2005. AR 388-89. On this form, Dr. Velkoff indicated that she found that Plaintiff "has been or will be disabled to the

extent [she is] unable to work at any job for a period of six (6) or more months due to a physical or mental impairment that is disabling." AR 388. In support this finding, Dr. Velkoff noted Plaintiff's diagnosis of chronic depression. AR 389.

William P. Flinn, M.D. conducted a physical examination of Plaintiff in June of 2005 at the Commissioner's request. AR 394-96. Dr. Flinn noted that the "overall picture" of Plaintiff's functioning was "poor," and he diagnosed her with depression and a history of Grave's disease. AR 396. Dr. Flinn did not assess significant physical limitations for Plaintiff but noted that "[d]iagnoses for psychiatric and psychological problems were evident in this exam to include depression if not personality disorders." AR 396-97. Dr. Flinn recommended a full evaluation by a psychiatrist or psychologist. AR 397.

Also in June of 2005, F. Bruce Merrill, M.D. conducted a psychiatric examination of Plaintiff at the Commissioner's request. AR 398-401. Dr. Merrill diagnosed Plaintiff with major depression, chronic, severe; sexual identity disorder, severe, chronic; posttraumatic stress disorder secondary to rape at gunpoint; and panic disorder with agoraphobia. AR 400. Dr. Merrill concluded that Plaintiff's prognosis "is probably quite poor" and that Plaintiff "is seriously compromised in her ability to do basic work-related activities, not so much understanding, but memory, sustained concentration, persistence and pace, certainly social interaction, and certainly adaptation." AR 401.

In August of 2005, Richard B. Garnand, M.D., a state agency psychiatrist, reviewed the medical record and completed a Psychiatric Review Technique Form. AR 402-15. Dr. Garnand opined that Plaintiff had a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration,

3

persistence or pace resulting from her affective disorder, anxiety-related disorder, and personance or pace resulting from her affective disorder, anxiety-related disorder, and personality disorder.  AR 402 & 412.

Dr. Garnand also completed a Mental Residual Functional Capacity Assessment Form for Plaintiff.  AR 416-19.  There, Dr. Garnand opined that Plaintiff had marked impairments in her ability to understand, remember, and carry out detailed instructions and interact appropriately with the general public.  AR 416-17.  Dr. Garnand further opined that Plaintiff had moderate impairments in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual; to work in coordination with or in proximity to others without being distracted; to complete a normal workday at a consistent pace; and to accept instructions and respond appropriately to criticism from supervisors.  *Id.*  Dr. Garnand elaborated that

> [w]hile her anxiety and depression may occasionally prevent completion of normal workday/week or cause reduced pace, [Plaintiff ] can maintain attendance/pace within customary tolerances when work does not require more than simple instructions, ordinary routines and simple decision making.  Can accept supervision and relate to co-workers if contact is not frequent or prolonged, but must have minimal to no interaction with the general public.

AR 418.

**B.  Plaintiff's Disability Hearing**

At the August 31, 2007 hearing, Plaintiff testified that she could no longer work as a water treatment plant operator because it was "oppressive" and "miserable" to be treated "stereotypically as a female" and because the position typically required rotating shifts which she could not work without becoming sick due to her Grave's disease.  AR 40-1.  Plaintiff also identified migraine headaches and trapezius muscle spasms/pain as physical ailments that interfered with her ability to work.  AR 41 & 44.  Plaintiff testified that she did various

4

household chores and cared for her mother who is in poor health. AR 32-3 & 59-60.

The ALJ asked Warren Haagenson, a vocational expert, if an individual of the same age, education, and experience as Plaintiff who was able to understand, remember, and carry out simple instructions; deal in an ordinary, routine work setting; make simple decisions; accept supervision and relate to co-workers if contact was not prolonged or frequent; and who should have minimal to no contact with the general public could perform Plaintiff's past work. AR 69. The VE responded that such an individual could not perform Plaintiff's past work because it was of a skilled or semi-skilled nature. *Id.* The VE further testified, however, that such an individual could work in the hand packing industry which includes jobs such as carton packer and poly packer; at small parts and bench assembly type jobs; and as a collater. AR 69-70.

The ALJ then asked the VE if an individual with the same mental limitations as the previous hypothetical who could lift 30 pounds occasionally, 15 pounds frequently and sit, stand and/or walk for a total of 6 hours in an 8 hour day with normal work breaks could work could work in the hand packing industry; at small parts and bench assembly type jobs; and as a collater. AR 70. The VE responded that such an individual could still perform these jobs and that the number of available jobs would not decrease as a result of these physical limitations. AR 70-1.

The ALJ next asked the VE if an individual with the same mental and physical limitations as the previous hypotheticals who could occasionally lift overhead and climb ladders, ropes or scaffolds; frequently climb stairs, balance, kneel, crouch, and crawl; and have no concentrated exposure to unprotected heights and moving and mechanical parts could work these same jobs. AR 71. The VE responded that such an individual could perform these same jobs

5

and that the number of available jobs would not decrease as a result of these additional limitations. AR 71-2.

In follow-up questioning, Plaintiff's attorney asked the VE if he would have responded differently if the individual from the ALJ's third hypothetical also had marked limitations in memory, sustained concentration, persistence and pace, social interaction, and adaptation. AR 72. The VE responded that such an individual could not perform competitive work. *Id.*

Plaintiff's attorney then asked the VE if he would have responded differently to the ALJ's third hypothetical if the individual had moderate limitations in their ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance and be punctual, complete a normal work week without interruption form psychologically based symptoms, and respond appropriately to criticism from supervisors. AR 72-3. The VE responded that such an individual would be unable to work if she could not do these things more than 20 percent of the time. AR 73-4.

**C. The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 416.920(a). At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 15, 1999. AR 19. At the second step, the ALJ determined that Plaintiff had severe impairments of an anxiety disorder, depression, gender identity disorder, and Grave's disease (untreated thyroid condition). *Id.* At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

At the fourth step of the sequential process, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light to medium work with lifting, carrying, pushing and/or pulling 30 pounds occasionally and 15 pounds frequently; sitting (with normal breaks) six hours in an eight hour workday; standing and/or walking (with normal breaks) six hours in an eight hour workday; no limitations ion the area of posture, manipulation, communication, vision, or environment. AR 22. The ALJ further found that Plaintiff had the capacity to perform simple instructions, follow ordinary routines, make simple work-related decisions, accept supervision and relate to co-workers if contact is not frequent and prolonged but that Plaintiff should have minimal to no interaction with the public. *Id.* After concluding that Plaintiff is unable to perform any past relevant work (AR 25), the ALJ proceeded to the fifth step of the sequential process and concluded that there were a significant number of jobs in the national economy that Plaintiff was capable of performing based on the VE's testimony. AR 25-6.

### III. Standard of Review

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamilton, supra,* 961 F.2d at 1498. I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995). Where evidence as a whole can support

either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed. *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

## IV. Analysis

Plaintiff raises four issues on appeal: (1) whether the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record; (2) whether the ALJ erred at Step 5 of the sequential process by identifying jobs that cannot be performed within the RFC he assessed for Plaintiff; (3) whether the ALJ erred in rejecting the opinion of Dr. Velkoff as that of a non-treating source; and (4) whether the ALJ's finding regarding Plaintiff's credibility is supported by substantial evidence in the record.

### A. The ALJ's Assessment of Plaintiff's RFC

Relying on *Haga v. Astrue,* 482 F.3d 1205 (10th Cir. 2007), Plaintiff argues that the ALJ erred in attaching "great weight" to the opinions of Dr. Merrill and Dr. Garnand but not incorporating all of the these doctors' findings of Plaintiff's impairments into the RFC that he assessed for her or explaining why he was not doing so. I agree that the ALJ erred in his treatment of the opinions of Dr. Merrill and Dr. Garnand.

In *Haga*, the ALJ's RFC assessment for the claimant incorporated three limitations found by the consulting mental health professional but rejected four others. The Tenth Circuit concluded that the ALJ should have explained why he rejected the four limitations noting that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Id.* at 1208.

As set forth above, Dr. Merrill opined that Plaintiff "is ***seriously compromised*** in her ability to do work-related activities, not so much understanding, but memory, sustained

8

concentration, persistence and pace, certainly social interaction, and certainly adaptation" (emphasis added). Plaintiff argues that this opinion is equivalent to finding that Plaintiff had "marked" limitations in these areas. If Plaintiff is correct, the significance of the ALJ's failure to incorporate these limitations into Plaintiff's RFC or to explain why he was not doing so is apparent from the VE's response to Plaintiff's attorney's hypothetical that assumed marked limitations in these areas. Specifically, the VE opined that an individual with such marked limitations could not perform competitive work. AR 72.

> The governing regulations provide the following definition of the term "marked:"
>
> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to seriously interfere with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(C). I agree that Dr. Merrill's findings that Plaintiff was "seriously compromised" in a number of areas may well satisfy the definition of the term "marked" in the governing regulations. The ALJ should therefore seek clarification from Dr. Merrill as to what he meant by his finding that Plaintiff is "seriously compromised" in a number of areas. *See* 20 C.F.R. § 416.919p(a) & (b). Thus, remand is necessary for further consideration of Dr. Merrill's opinions by the ALJ.

I note, however, that this case is somewhat distinguishable from *Haga* based on other evidence in the record. A finding by the ALJ on remand that it is in fact Dr. Merrill's opinion that Plaintiff has "marked" limitations in a number of areas will result in conflicting evidence since Dr. Garnand found that Plaintiff has only "moderate" limitations in many of these same areas. On remand then, rather than explain why he rejected an uncontradicted medical opinion

9

as in *Haga*, the ALJ may need to explain why he chooses to reject the "marked" limitations found by Dr. Merrill in favor of the "moderate" restrictions found by Dr. Garnand or otherwise though he found the opinions of Dr.Merrill to be entitled to "great weight."

With respect to Dr. Garnand, Plaintiff argues that the ALJ did not incorporate Dr. Garnand's findings that Plaintiff had moderate impairments in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual; to work in coordination with or in proximity to others without being distracted; to complete a normal workday at a consistent pace; and to accept instructions and respond appropriately to criticism from supervisors into the RFC that he assessed for her. AR 416-17. The Commissioner responds that these findings which are set forth in the "Summary Conclusions" section of the Mental Residual Functional Capacity Assessment Form do not constitute Dr. Garnard's opinion as to Plaintiff's mental capacity for work. Rather, the Commissioner argues that Dr. Garnard's opinion is set forth in the "Functional Capacity Assessment" section of the form where Dr. Garnard indicated that Plaintiff can "maintain attendance/pace within customary tolerances when work does not require more than simple instructions, ordinary routines and simple decisionmaking" and "accept supervision and relate to co-workers if contact is not frequent or prolonged" but cannot regularly interact with the public. AR 418. The Commissioner further argues that since the ALJ incorporated all of these findings into Plaintiff's RFC (AR 22), Plaintiff's argument that he improperly rejected portions of Dr. Garnand's opinions without explanation must fail.

The primary flaw in the Commissioner's argument is that the preface to the "Functional Capacity Assessment" section states that it is to reflect "elaborations" on the capacities found in

10

the "Summary Conclusions" section. The two sections must therefore be read in conjunction with each other. It is apparent from the VE's response to hypothetical questioning from Plaintiff's attorney that incorporating all of the moderate impairments that Dr. Garnard found into Plaintiff's RFC affects his opinion of Plaintiff's ability to work. Specifically, the VE testified that Plaintiff could not work if she was unable to perform in the areas in which she had moderate limitations more than 20 percent of the time. AR 73-4. On remand then, the ALJ must either incorporate all of the impairments found by Dr. Garnand into Plaintiff's RFC or explain why he chose not to do so whether in reliance on the opinions of Dr. Merrill or otherwise.

**B. The Jobs Identified by the ALJ at Step 5**

Plaintiff argues that the level of reasoning required by the jobs the ALJ concluded Plaintiff was capable of performing is inconsistent with the RFC that he assessed for her. I agree that there is an inconsistency between the reasoning requirements for the jobs the ALJ cited at Step 5 of the sequential process and the RFC he assessed at Step 4.

Relying on the VE's testimony which he found to be consistent with the DOT, the ALJ identified the jobs of hand packager, small parts assembler, and collater as those that an individual with Plaintiff's age, education, work experience, and RFC was capable of performing. AR 26. Under the *Dictionary of Occupational Titles* ("DOT"), each of these jobs require an ability to perform reasoning at Level 2, which is defined in the DOT as follows:

> LEVEL 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

In his RFC assessment, the ALJ found that Plaintiff only retained the capacity to perform simple instructions. AR 22. Dr. Garnand whose opinions were given "great weight" by the ALJ

similarly opined that Plaintiff had a marked impairment in her ability to understand, remember, and carry out detailed instructions. The ALJ's conclusion that Plaintiff was capable of performing jobs that would require her to carry out detailed instructions is therefore at odds with the RFC that he assessed for her.  On remand, the ALJ must address this inconsistency to the extent that the same RFC is applicable once further consideration is given to the opinions of Dr. Merrill and Dr. Garnand as set forth in the preceding section.  I further note that additional consideration of the jobs Plaintiff is capable of performing must also be undertaken if any adjustments are made to Plaintiff's RFC on remand.

Plaintiff also argues that the ALJ erred in accepting the VE's testimony that Plaintiff could work as a carton packer since this job does not exist in Colorado.  The VE testified, however, that the position carton packer was but one example of a job in the hand packaging industry.  AR 69.  Since the ALJ only identified the generic job of hand packager in his decision, there is no basis to conclude that he relied on erroneous testimony from the VE in determining that Plaintiff was capable of performing this job.

## C.  The ALJ's Treatment of Dr. Velkoff's Opinion

Plaintiff argues that the ALJ erred in declining to give controlling weight to Dr. Velkoff's opinion that Plaintiff was disabled on the basis that she was not a treating source.  The Commissioner acknowledges that the ALJ erred in failing to recognize Dr. Velkoff as a treating source but argues that such error was harmless because Dr. Velkoff's opinion is not dispositive on the ultimate issue of disability.

Notwithstanding the fact that the ultimate responsibility for determining disability lies with the Commissioner, *see Castenello,* 26 F.3d at 1029, I agree that the ALJ must re-evaluate

Dr. Velkoff's opinion under the correct legal standards. Specifically, a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence," is given controlling weight. 20 C.F.R. § 404.1527(d)(2). Furthermore, when a treating physician's opinion is not given controlling weight, it is still entitled to deference and other enumerated factors must be applied to determine the appropriate weight to give the opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003) (*quoting* Soc. Sec. R. 9602p, 1996 WL 374188 at *4). On remand, the ALJ must apply these standards to Dr. Velkoff's opinion, determine the appropriate weight to attach to it, and revise his findings and conclusions accordingly.

## D. The ALJ's Findings Regarding Plaintiff's Credibility

Plaintiff argues that the ALJ's findings regarding Plaintiff's credibility were not based on substantial evidence. Specifically, Plaintiff takes issue with the negative inferences the ALJ drew from the fact that Plaintiff had assumed care for her mother about the same time she stopped working as a water treatment plant operator; that there were no consistent complaints of migraine headaches in the medical evidence; and that Plaintiff was able to work steadily in a male-dominated environment for over 20 years notwithstanding her gender identity disorder. Plaintiff also argues that the ALJ's finding that Plaintiff attempts to work after her alleged onset date may have involved jobs with greater demands that the RFC he found for her was speculative.

Although Plaintiff cites evidence that arguably contradicts the ALJ's negative findings regarding plaintiff's credibility, the Commissioner cites other evidence that supports these findings. Among other things, that fact that Plaintiff provides extensive care to her ailing mother

13

and does not take medication for her severe impairments constitute evidence that Plaintiff's testimony about the limiting effects of her impairments are not entirely credible. Credibility determinations are the province of the ALJ and will be upheld provided that they are supported by substantial evidence. *Diaz v. Sec. of Health & Human Serv.,* 898 F.2d 774, 777 (10th Cir. 1991). Because there is substantial evidence in the record to support the ALJ's finding that Plaintiff's hearing testimony was "not entirely credible," this finding was not in error.

## V. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART. The case is remanded for further proceedings consistent with this Order.

Dated: September __30__, 2010 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE